## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| WOODBRIDGE GROUP OF COMPANIES, LLC, *et al.*,[1] | Case No. 17-12560 (JKS) |
| Remaining Debtors. | (Jointly Administered) |
| MICHAEL GOLDBERG, in his capacity as Liquidating Trustee of the WOODBRIDGE LIQUIDATION TRUST, | |
| Plaintiff, | Adversary Proceeding No. __-_____ (JKS) |
| vs. | |
| ANDREW R. VARA, in his capacity as the United States Trustee for Region 3; RAMONA D. ELLIOTT, in her capacity as Acting Director of the United States Trustee Program; and the UNITED STATES TRUSTEE PROGRAM | |
| Defendants. | |

## COMPLAINT FOR DECLARATORY JUDGMENT AND RECOVERY OF OVERPAYMENTS

Michael Goldberg, as Liquidating Trustee (the "<u>Liquidating Trustee</u>" or

"<u>Plaintiff</u>") of The Woodbridge Liquidation Trust (the "<u>Liquidation Trust</u>") formed pursuant to

the *First Amended Joint Chapter 11 Plan of Liquidation of Woodbridge Group of Companies,*

---

[1] On February 25, 2019, the Court entered an order closing the Bankruptcy Cases of all Debtors except Woodbridge Group of Companies, LLC and Woodbridge Mortgage Investment Fund 1, LLC (together, the "<u>Remaining Debtors</u>"). The Remaining Debtors' Bankruptcy Cases are being jointly administered under Case No. 17-12560 (KJC). The Remaining Debtors and the last four digits of their respective federal tax identification numbers are as follows: Woodbridge Group of Companies, LLC (3603) and Woodbridge Mortgage Investment Fund 1, LLC (0172). The Remaining Debtors' mailing address is 14140 Ventura Boulevard, #302, Sherman Oaks, California 91423.

*LLC and Its Affiliated Debtors* dated August 22, 2018 (Bankr. Docket No. 2397) (as it may be amended, modified, supplemented, or restated from time to time, the "Plan"),[2] solely in his capacity as Liquidating Trustee, and not in any individual or other capacity, files this complaint against the United States Trustee Program (the "Program"), Ramona D. Elliott, Director of the Program ("Director"), and Andrew R. Vara, United States Trustee for Region 3 (the "UST," and, together with the Program and the Director, "Defendants"), and alleges as follows:

## NATURE OF THE ACTION

1.      By this action, the Liquidating Trustee seeks to recover amounts unconstitutionally assessed against and paid by certain of the Debtors (as defined below) in the above-captioned cases and/or the Liquidation Trust during the 2018 calendar year and the first quarter of 2019.[3]  Such fees were assessed pursuant to 28 U.S.C. § 1930(a)(6) ("Section 1930") under a revised statutory fee structure that the United States Supreme Court held unconstitutional in *Siegel v. Fitzgerald* (*In re Circuit City Stores, Inc.*), 142 S.Ct. 1770 (2022).  As is set forth in more detail below, the Liquidating Trustee, on behalf of the Liquidation Trust, which the Plan vested with the exclusive power to pursue actions such as this (Plan §§5.4.3, 5.4.15, 5.6.1), seeks (i) declaratory judgment pursuant to 28 U.S.C. § 2201 establishing the amount of the unconstitutional overpayments of Section 1930 fees by the Debtors; (ii) a judgment for monetary

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

[3] Because the Liquidating Trustee was appointed during Q1 of 2019 and before UST Fees (as defined below) for that quarter were due and paid, as a technical matter, some portion of the UST Fees at issue in this Complaint may have been paid by the Liquidating Trust rather than the Debtors.  For simplicity (and because, in any case, Plaintiff succeeded to the Debtors' right to recover overpayments of such fees), Plaintiff refers herein to payments by the Debtors for UST Fees related to the Debtors' operations, even though some of those payments may have actually been made by the Liquidating Trust following the effective date of the Plan (as defined below).

2

relief requiring Defendants to refund or cause to be refunded the overpayments to the

Liquidation Trust; (iii) avoidance and recovery of the overpayments pursuant to 11 U.S.C. §§

549(a) and 550(a); and (iv) judgment in favor of Plaintiff on a claim of unjust enrichment.  The

unconstitutionally assessed fees diminished the recovery to the Debtors' creditors,

overwhelmingly comprised of the victims of the enormous Ponzi scheme that precipitated these

bankruptcy cases.  A refund of the overpayments is required to remedy that injury.

## THE PARTIES

### *Plaintiff*

2.      Plaintiff Michael Goldberg is the Liquidating Trustee appointed under that

certain Liquidation Trust Agreement dated as of February 15, 2019, and executed pursuant to

Section 5.4.2 of the Plan (as amended, modified, supplemented or restated from time to time, the

"Liquidating Trust Agreement") (Bankr. Docket Nos. 3396, 3421).

3.      As Liquidating Trustee, Plaintiff has the authority and right "to carry out

and implement all applicable provisions of the Plan," and to act for the Liquidation Trust in

exercising its "exclusive right, power, and interest … to institute, commence, file, pursue, [and]

prosecute … all Liquidation Trust Actions."  Liq. Trust Agm't §§ 5.4.5, 5.4.15.

### *Defendants*

4.      The Program is a component of the Department of Justice that operates in

eighty-eight of the federal judiciary's ninety-four judicial districts and is responsible for

overseeing the administration of bankruptcy cases and private trustees under 28 U.S.C. § 586 and

11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") in the districts where it operates (the "UST

3

<u>Districts</u>").  As part of those administrative duties, the Program collects quarterly fees pursuant

to Section 1930, which fees are deposited into the United States Trustee System Fund (the

"<u>Fund</u>").

5.      The Director is the Director of the Program, responsible for overseeing the

work of the Program's 21 regions and 90 field offices.

6.      The UST is the United States Trustee for Region 3.  As such, the UST is

responsible for administering the Program within Region 3.

## JURISDICTION AND VENUE

7.      The United States Bankruptcy Court for the District of Delaware (the

"<u>Court</u>") has jurisdiction over this action under 28 U.S.C. §§ 157(a) and 1334.  In addition, the

Court expressly retained jurisdiction, pursuant to 11 U.S.C. §§ 105(a) and 1142, to "hear and

determine any and all adversary proceedings … arising out of, under, or related to, the Chapter

11 Cases, including the Liquidation Trust Actions."  Plan § 10.1(e).

8.      This adversary proceeding is a core proceeding within the meaning of 28

U.S.C. § 157(b)(A) and (O).  In any event, Plaintiff consents, pursuant to Rule 7008 of the

Federal Rules of Bankruptcy Procedure, to entry of final orders or judgment by this Court.

9.      Venue of this adversary proceeding is proper in this Court pursuant to 28

U.S.C. §§ 1408 and 1409.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

10.      On December 4, 2017 (the "<u>Initial Petition Date</u>"), Woodbridge Group of

Companies, LLC and certain of its affiliates commenced voluntary cases under chapter 11 of the

Bankruptcy Code.  Other affiliates (collectively, and together with the original debtors, the "Debtors") also filed voluntary chapter 11 cases within the following four months (collectively, the "Chapter 11 Cases").

11.    The Chapter 11 Cases arose out of a massive, multi-year Ponzi scheme perpetrated by Robert Shapiro ("Shapiro") beginning no later than 2012 and running until the Initial Petition Date.

12.    Before the Ponzi scheme was discovered, Shapiro raised more than $1.22 billion from approximately 10,000 victims.

13.    Shapiro used outright deception to obtain the victims' money.  He told would-be investors that their money would be used to make high-interest loans to unrelated, third-party borrowers, that the loans would be secured by mortgages backed by the specific third-party properties, and that there would be significant equity cushions to protect the loans.

14.    In reality, these were lies on a massive scale.  Shapiro took nearly all of the victims' money and comingled it into one central bank account that generally could not be traced to any particular Woodbridge "fund" entity or its investors.  Funds in that central, pooled account were "loaned" to disguised affiliates with no ability to service debt and used to pay approximately $64.5 million in commissions to sales agents who sold these fraudulent "investments" and to fund a lavish lifestyle for Shapiro (with at least $21.2 million of investor money spent on luxury items, travel, wine, and the like).  Additionally and critically, because Shapiro and the prepetition Debtors, which he controlled, had no other significant sources of cash inflows to pay promised interest and principal to the victims, he used approximately $368

million of new victim funds to pay false "returns" to existing victims (the classic tell-tale sign of a Ponzi scheme).

15.     After the Ponzi scheme was discovered and the Chapter 11 Cases were commenced, the Debtors and key creditor constituencies, including groups of defrauded victims, negotiated the appointment of a new board of managers and, thereafter, a global settlement that was ultimately embodied in the Plan.  The negotiated terms of the Plan were designed to ensure that the victims could recover as much money as possible and mitigate the harm they suffered from Shapiro's fraud.

16.     On October 26, 2018, this Court entered an order confirming the Plan (Bankr. Docket No. 2903) (the "Confirmation Order").

17.     The Plan provides for, *inter alia*, the establishment of the Liquidation Trust on the Effective Date of the Plan in accordance with the terms of the Plan and the Liquidation Trust Agreement.  *See* Plan §§ 1.75, 5.4.  Among the express purposes of the Liquidation Trust is "collecting, administering, distributing and liquidating the Liquidation Trust Assets for the benefit of the Liquidation Trust Beneficiaries."  Liq. Trust Agm't recital 5.

18.     The Effective Date of the Plan occurred on February 15, 2019.

19.     On the Effective Date, the Liquidation Trust was automatically vested with all of the Debtors' and the Estates' respective rights, title, and interest in and to all Liquidation Trust Assets.  *See* Plan § 5.4.3.  Further, the Liquidation Trust, as successor in interest to the Debtors, has the right and power to file and pursue any and all Liquidation Trust Actions without any further order of the Bankruptcy Court.  *Id.* § 5.4.15.  As defined in the plan,

DOCS_DE:241844.1

"Liquidation Trust Actions" include, *inter alia*, "all Avoidance Actions and Causes of Action held by the Debtors or their Estates. . . ." *Id.* § 1.76.

20.     Since the Effective Date, the Liquidating Trustee has carried out his duties diligently and in accordance with the terms of the Liquidation Trust and the Plan, with the goal of maximizing the value of the Liquidation Trust Assets and distributions for the benefit of the Liquidation Trust Beneficiaries.

21.     The Debtors timely paid quarterly fees to the Program in accordance with Section 1930 and 11 U.S.C. § 507(a)(2) (the "UST Fees") throughout the pendency of the Chapter 11 Cases.[4]

22.     In 2017, Congress amended Section 1930, altering the fee structure for chapter 11 debtors with cases pending in UST Districts beginning January 1, 2018 (the "2017 Amendment").

23.     The 2017 Amendment substantially increased quarterly UST Fees for debtors with cases pending in UST Districts but not in the six judicial districts where Bankruptcy Administrators, rather than the Program, oversee case administration ("BA Districts").

24.     Under the amended UST Fee schedule, debtors in UST Districts with disbursements of $1,000,000 or more during a quarter paid increased trustee fees for that quarter, with a maximum fee of $250,000 per debtor per quarter (increased from a pre-2017 Amendment maximum of $30,000).

---

[4] Pursuant to the Plan, the Liquidating Trustee is required (and has continued) to remit UST Fees on a quarterly basis until the Chapter 11 Cases are closed or a final decree is entered.  Plan § 11.3.

7

25.     Although the Judicial Conference of the United States, which sets the fees paid by debtors in BA Districts, eventually implemented the amended fee schedule in BA Districts, that change did not take effect in BA Districts until October 1, 2018, and did not apply to cases filed in BA Districts prior to that date.

26.     As a result, from January 1, 2018, through the first quarter of 2021 (when a change in the law required uniform fees across districts, Pub. L. 116-325 § 3(d)(2), 134 Stat. 5088 (2021)), debtors like the Debtors in these Chapter 11 Cases who filed petitions prior to January 1, 2018, in UST Districts paid substantially higher quarterly fees than similarly situated debtors with cases pending in BA Districts.

27.     As a result of that new fee structure under Section 1930 and based upon timely filed Quarterly Operating Reports for Q1, Q2, Q3, and Q4 of 2018 and Q1 of 2019, the Program invoiced the Debtors and the Debtors collectively paid the UST $1,847,026.39 more in UST Fees under the post-2017 Amendment fee schedule than a similarly situated debtor with a chapter 11 case pending in a BA District would have paid (collectively, the "Unconstitutional Overpayments").

28.     The following chart summarizes (i) the quarterly UST Fees paid by Debtors in these Chapter 11 Cases during quarters in which those Debtors made distributions of $1,000,000 or more and (ii) the quarterly fees those Debtors would have paid under the pre-2017 Amendment fee schedule (which would have applied to the Debtors if their cases had been pending in a BA District instead of a UST District).

## Summary of Unconstitutional Overpayments

| Debtor Case No. | Debtor | Quarter | Disbursements During Quarter | Quarterly Fee Paid | Fee Under Old Schedule | Overpayment |
|---|---|---|---|---|---|---|
| 17-12560 | Woodbridge Group of Companies, LLC | 2018 Q1 | $8,575,379 | $85,753.79 | $13,000.00 | $72,753.79 |
| 17-12560 | Woodbridge Group of Companies, LLC | 2018 Q2 | 27,114,282 | 250,000.00 | 20,000.00 | 230,000.00 |
| 17-12560 | Woodbridge Group of Companies, LLC | 2018 Q3 | 26,405,401 | 250,000.00 | 20,000.00 | 230,000.00 |
| 17-12560 | Woodbridge Group of Companies, LLC | 2018 Q4 | 12,761,817 | 127,618.17 | 13,000.00 | 114,618.17 |
| 17-12560 | Woodbridge Group of Companies, LLC | 2019 Q1 | > 30,000,000 | 250,000.00 | 30,000.00 | 220,000.00 |
| 17-12563 | Addison Park Investments, LLC | 2018 Q1 | 2,083,974 | 20,839.74 | 9,750.00 | 11,089.74 |
| 17-12563 | Addison Park Investments, LLC | 2018 Q2 | 2,075,189 | 20,751.89 | 9,750.00 | 11,001.89 |
| 17-12563 | Addison Park Investments, LLC | 2018 Q3 | 1,705,614 | 17,056.14 | 6,500.00 | 10,556.14 |
| 17-12563 | Addison Park Investments, LLC | 2018 Q4 | 2,021,873 | 20,218.73 | 9,750.00 | 10,468.73 |
| 17-12563 | Addison Park Investments, LLC | 2019 Q1 | 2,721,682 | 27,216.82 | 9,750.00 | 17,466.82 |
| 17-12576 | Arlington Ridge Investments, LLC | 2018 Q4 | 1,423,134 | 14,231.34 | 6,500.00 | 7,731.34 |
| 17-12576 | Arlington Ridge Investments, LLC | 2019 Q1 | 1,739,935 | 17,399.35 | 6,500.00 | 10,899.35 |
| 17-12589 | Squaretop Investments, LLC | 2018 Q1 | 1,170,923 | 11,709.23 | 6,500.00 | 5,209.23 |
| 17-12589 | Squaretop Investments, LLC | 2018 Q2 | 1,645,880 | 16,458.80 | 6,500.00 | 9,958.80 |
| 17-12589 | Squaretop Investments, LLC | 2018 Q3 | 1,381,120 | 13,811.20 | 6,500.00 | 7,311.20 |
| 17-12589 | Squaretop Investments, LLC | 2018 Q4 | 1,931,513 | 19,315.13 | 6,500.00 | 12,815.13 |
| 17-12623 | Bishop White Investments, LLC | 2018 Q2 | 18,000,911 | 180,009.11 | 20,000.00 | 160,009.11 |
| 17-12623 | Bishop White Investments, LLC | 2019 Q1 | 1,030,431 | 10,304.31 | 6,500.00 | 3,804.31 |
| 17-12628 | Grand Midway Investments, LLC | 2018 Q2 | 26,646,148 | 250,000.00 | 20,000.00 | 230,000.00 |
| 17-12632 | Gravenstein Investments, LLC | 2018 Q1 | 1,208,259 | 12,082.59 | 6,500.00 | 5,582.59 |
| 17-12635 | Summerfree Investments, LLC | 2018 Q1 | 1,236,611 | 12,366.11 | 6,500.00 | 5,866.11 |
| 17-12635 | Summerfree Investments, LLC | 2018 Q3 | 1,079,540 | 10,795.40 | 6,500.00 | 4,295.40 |
| 17-12636 | Craven Investments, LLC | 2018 Q2 | 4,637,262 | 46,372.62 | 10,400.00 | 35,972.62 |
| 17-12681 | Heilbron Manor Investments, LLC | 2018 Q4 | 5,666,846 | 56,668.46 | 13,000.00 | 43,668.46 |
| 17-12694 | Hornbeam Investments, LLC | 2018 Q4 | 1,428,246 | 14,282.46 | 6,500.00 | 7,782.46 |
| 17-12705 | Diamond Cove Investments, LLC | 2018 Q2 | 3,144,310 | 31,443.10 | 10,400.00 | 21,043.10 |
| 17-12705 | Diamond Cove Investments, LLC | 2018 Q4 | 2,215,951 | 22,159.51 | 9,750.00 | 12,409.51 |
| 17-12708 | Imperial Aly Investments, LLC | 2018 Q4 | 7,045,974 | 70,459.74 | 13,000.00 | 57,459.74 |
| 17-12722 | Bluff Point Investments, LLC | 2018 Q4 | 1,593,430 | 15,934.30 | 6,500.00 | 9,434.30 |
| 17-12722 | Bluff Point Investments, LLC | 2019 Q1 | 11,040,188 | 110,401.88 | 13,000.00 | 97,401.88 |
| 17-12733 | Lincolnshire Investments, LLC | 2019 Q1 | 1,839,371 | 18,393.71 | 6,500.00 | 11,893.71 |
| 17-12739 | Winding Road Investments, LLC | 2018 Q1 | 1,252,324 | 12,523.24 | 6,500.00 | 6,023.24 |
| 17-12739 | Winding Road Investments, LLC | 2018 Q2 | 1,849,971 | 18,499.71 | 6,500.00 | 11,999.71 |
| 17-12739 | Winding Road Investments, LLC | 2018 Q3 | 1,154,476 | 11,544.76 | 6,500.00 | 5,044.76 |
| 17-12739 | Winding Road Investments, LLC | 2018 Q4 | 1,976,481 | 19,764.81 | 6,500.00 | 13,264.81 |
| 17-12739 | Winding Road Investments, LLC | 2019 Q1 | 1,362,354 | 13,623.54 | 6,500.00 | 7,123.54 |
| 17-12767 | Drawspan Investments, LLC | 2018 Q4 | 1,824,883 | 18,248.83 | 6,500.00 | 11,748.83 |
| 17-12768 | Woodbridge Mortgage Inv Fund 1, LLC | 2019 Q1 | 4,828,838 | 48,288.38 | 10,400.00 | 37,888.38 |
| 17-12792 | Zestar Investments, LLC | 2018 Q3 | 1,138,181 | 11,381.81 | 6,500.00 | 4,881.81 |
| 17-12808 | Pinney Investments, LLC | 2018 Q3 | 3,135,685 | 31,356.85 | 10,400.00 | 20,956.85 |
| 17-12830 | Sagebrook Investments, LLC | 2019 Q1 | 4,188,846 | 41,888.46 | 10,400.00 | 31,488.46 |
| 17-12834 | Silk City Investments, LLC | 2018 Q2 | 1,101,507 | 11,015.07 | 6,500.00 | 4,515.07 |
| 18-10296 | Pennhurst Investments, LLC | 2018 Q2 | 1,008,730 | 10,087.30 | 6,500.00 | 3,587.30 |
| **Totals** | | | | $2,272,276.39 | $425,250.00 | $1,847,026.39 |

29.     In its June 6, 2022, decision in *Siegel v. Fitzgerald*, the United States

Supreme Court held that the disparate fees charged to debtors in UST Districts versus similarly

situated debtors in BA Districts under the 2017 Amendment, violated the uniformity requirement

of the United States Constitution's Bankruptcy Clause.  142 S.Ct. 1770, 1782-83 (2022) (holding

that "the uniformity requirement of the Bankruptcy Clause prohibits Congress from arbitrarily

burdening only one set of debtors with a more onerous funding mechanism than that which

applies to debtors in other States").  The Supreme Court remanded to the Court of Appeals for

the Fourth Circuit to determine the appropriate remedy for the unconstitutional overpayment of

UST Fees.  *Id.* at 1783.  The Fourth Circuit, in turn, remanded to the Bankruptcy Court for the

Eastern District of Virginia.  *Siegel v. Fitzgerald* (*In re Circuit City Stores, Inc.*), No. 19-2240

(L) (4th Cir. Jul. 20, 2022) (Docket No. 59).  The Supreme Court also granted petitions for

certiorari in two additional cases, simultaneously vacating the Circuit Court decisions in those

cases and remanding them for further consideration in light of *Siegel v. Fitzgerald*.  *Harrington*

*v. Clinton Nurseries, Inc.*, 143 S. Ct. 297 (2022); *Off. of the United States Tr. v. John Q.*

*Hammons Fall 2006, LLC*, 142 S. Ct. 2810 (2022).

    30.  Following the Supreme Court's decision in *Siegel v. Fitzgerald* and

remand of *Clinton Nurseries* and *John Q Hammons*, the Circuit Courts of Appeal for the Second

Circuit and the Tenth Circuit both concluded that the appropriate remedy for the unequal

treatment of debtors in UST Districts under the 2017 Amendment is monetary relief in the form

of a refund of the amount of quarterly fees paid exceeding the amount that such debtors would

have owed in a Bankruptcy Administrator district during the same period.  *See Clinton*

*Nurseries, Inc. v. Harrington* (*In re Clinton Nurseries, Inc.*), 998 F.3d 56, 69-70 (2d Cir. 2021)

("To the extent that Clinton has already paid the unconstitutional fee increase, it is entitled to a

refund of the amount in excess of the fees it would have paid in a BA District during the same

period."), *amended and reinstated* No. 20-1209-bk, 2022 WL 16844614 (2d Cir. Nov. 10, 2022);

*John Q. Hammons Fall 2006, LLC v. Office of the United States Trustee* (*In re John Q.*

*Hammons Fall 2006, LLC*), 15 F.4th 1011, 1026 (10th Cir. 2021), *reinstated* No. 20-3203, 2022

WL 3354682 at *1 (10th Cir. Aug. 15, 2022) ("We reverse and remand for determination of

Appellants' quarterly Chapter 11 fees and a refund of overpayment consistent with our original

opinion.").

       31.    On December 15, 2022, the Bankruptcy Court for the Eastern District of

Virginia (the "E.D. Va. Bankruptcy Court") issued an opinion in the remanded *Siegel v.*

*Fitzgerald* proceedings denying a motion by the defendants in that case to dismiss the plaintiff's

complaint for failure to state a claim. *Siegel v. United States Trustee Program* (*In re Circuit City*

*Stores, Inc.*), Adv. Pro. No. 19-03091-KRH (Bankr. E.D. Va. Dec. 15, 2022) (Docket No. 64).

The E.D. Va. Bankruptcy Court agreed with the decisions of the Second Circuit and Tenth

Circuit and held that the plaintiff in the case before it—the Trustee of the Circuit City Stores,

Inc. Liquidating Trust—was entitled under both applicable non-bankruptcy law and sections

549(a) and 550(a) of the Bankruptcy Code to a refund in the amount of the unconstitutional

overpayments. *Id.* at 5-13.

       32.    The conclusion reached by the Second and Tenth Circuits and the E.D.

Va. Bankruptcy Court that overpayments of fees into the Fund must be remedied by refunds to

depositors is consistent with both the statutorily-expressed intent of Congress and the Program's

own policies.  In appropriating funds for the Program, Congress made amounts held in the Fund

available for payment of refunds as follows:

> [N]otwithstanding any other provision of law, deposits to the
> United States Trustee System Fund and amounts herein
> appropriated shall be available in such amounts as may be
> necessary to pay refunds due depositors.

Consolidated Appropriations Act, 2019, Pub. L. No. 116-6, at 103-04 (2019).  Similarly, the

United States Trustee Program Policy and Practices Manual (the "USTP Policy and Practices

Manual") requires the Program to follow "[p]ayment refund procedures established by the

Executive Office of the United States Trustee] … in the event that overpayment of quarterly fees

necessitates a refund."  USTP Policy and Practices Manual, Ch. 3-9.6.2.4.

33.     The Debtors paid the Unconstitutional Overpayments to the Fund based on

a fee structure that was ultimately held to be unconstitutional.  But for that unconstitutional fee

structure, the Debtors would not have made the overpayments to the Fund and those funds would

be available to the Estates and their creditors.

34.     Recovery of the Unconstitutional Overpayments will increase the funds

available in the Liquidation Trust for distribution to the Debtors' creditors—overwhelmingly the

victims of the Ponzi scheme.

## **FIRST CLAIM FOR RELIEF**

### **Declaratory Judgment Pursuant to 28 U.S.C. § 2201**

35.     Plaintiff repeats and realleges each of the allegations set forth above as if

fully set forth herein.

36.     For the first, second, third and fourth quarters of 2018 and the first quarter

of 2019, the Debtors and/or the Liquidation Trust paid excess UST Fees of $1,847,026.39 in

compliance with the Amendment, which was subsequently deemed unconstitutional.

DOCS_DE:241844.1

37.     There is an actual controversy between Plaintiff and Defendants, in that the funds comprising the Unconstitutional Overpayments were assessed and collected and are being retained by the Program notwithstanding the United States Supreme Court's ruling that they were assessed and collected in violation of the uniformity requirement of the Bankruptcy Clause of the United States Constitution.

38.     Pursuant to 28 U.S.C. § 2201, this Court is empowered to "declare the rights and other legal relations of any interested party" in cases of actual controversy within its jurisdiction.

39.     Pursuant to section 105(a) of the Bankruptcy Code, this Court is empowered to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."

40.     Pursuant to section 1142(b) of the Bankruptcy Code, this Court is empowered to "direct the debtor and any other necessary party to … perform any other act … that is necessary for the consummation of the plan."

41.     This dispute is definite and concrete, touching the legal relations of the parties, which have adverse legal interests in the funds comprising the Unconstitutional Overpayments.  Defendants have retained the Unconstitutional Overpayments, which should have been and must now be refunded to the Liquidation Trust to be administered for the benefit of the Liquidation Trust Beneficiaries.

42.     The dispute is real and substantial, and the issuance of a declaratory judgment would provide Plaintiff with specific relief by conclusively declaring that the Estates

13

are entitled to a refund of the Unconstitutional Overpayments, which must be returned to the

Liquidation Trust to be administered for the benefit of the Liquidation Trust Beneficiaries.

43.     Pursuant to 28 U.S.C. § 2201, Plaintiff is entitled to a declaratory

judgment that the Unconstitutional Overpayments in the aggregate amount of $1,847,026.39

were improperly assessed and collected and must be refunded to the Liquidation Trust.

## SECOND CLAIM FOR RELIEF

### Recovery of Overpayments

44.     Plaintiff repeats and realleges each of the allegations set forth above as if

fully set forth herein.

45.     Under *Siegel v. Fitzgerald*, 142 S.Ct. at 1782-83, the Unconstitutional

Overpayments were improperly assessed against and collected from the Debtors in violation of

the uniformity requirement of the Bankruptcy Clause.

46.     Like the debtors in *Clinton Nurseries*, *John Q Hammons*, and *Siegel v.

Fitzgerald*, Plaintiff is "entitled to relief" in the form "a refund of the amount of quarterly fees

paid exceeding the amount that Debtors would have owed in a Bankruptcy Administrator district

during the same period." *John Q Hammons*, 15 F.4th at 1026.

## THIRD CLAIM FOR RELIEF

### Avoidance and Recovery of Unconstitutional Overpayments Under 11 U.S.C. §§ 549(a), 550

47.     Plaintiff repeats and realleges each of the allegations set forth above as if

fully set forth herein.

14

48.     Section 549(a) of the Bankruptcy Code authorizes a trustee to avoid a transfer of property made after the commencement of the case that is not authorized under the Bankruptcy Code or by the bankruptcy court.  11 U.S.C. § 549(a).

49.     Section 550(a) of the Bankruptcy Code provides in relevant part that "to the extent that a transfer is avoided under section … 549 … of [the Bankruptcy Code], the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property."  11 U.S.C. § 550(a).

50.     The Bankruptcy Code, while contemplating the payment of quarterly UST Fees generally (*see* 11 U.S.C. § 1121(b)(4)(k)), does not authorize the payment of unconstitutional fees.

51.     The Unconstitutional Overpayments by the Debtors to Defendants was a transfer of property of the estate that occurred after the commencement of the Chapter 11 Cases and was not authorized by the Bankruptcy Code or the Bankruptcy Court.

52.     The Plan expressly grants the Plaintiff, as successor in interest to the Debtors, the right and power to file and pursue any and all Liquidation Trust Actions, including Avoidance Actions, which in turn include "[a]ny and all causes of action, claims, remedies, or rights that may be brought by or on behalf of the Debtors or the Estates under [Section 549 of the Bankruptcy Code]."  *See* Plan §§ 1.5, 1.76, 5.4.15.

53.     Accordingly, Plaintiff is entitled to avoid the transfer of the Unconstitutional Overpayments pursuant to section 549(a) of the Bankruptcy Code.

DOCS_DE:241844.1

54.     Upon avoidance, Plaintiff is further entitled to recover the amount of the Unconstitutional Overpayments from Defendants, collectively, as the "initial transferee" and/or "the entity for whose benefit such transfer was made."  11 U.S.C. § 550(a)(1).

## FOURTH CLAIM FOR RELIEF

### Unjust Enrichment

55.     Plaintiff repeats and realleges the allegations set forth above as though fully set forth herein.

56.     The Amendment, which has been held unconstitutional by the Supreme Court, caused the Program to be enriched at the expense of the Liquidation Trust and its beneficiaries.

57.     The Program received substantial fees that in good conscience should be refunded to the Liquidation Trust to be administered for the benefit of the Liquidation Trust Beneficiaries.

58.     Based on equitable principles of restitution for unjust enrichment, Plaintiff seeks a judgment against the Program for restitution and disgorgement of the Unconstitutional Overpayments paid by the Debtors.

## PRAYER FOR RELIEF

WHEREFORE, by reason of the foregoing, Plaintiff requests that the Court:

A.     Enter a declaratory judgment that the Unconstitutional Overpayments in the aggregate amount of $1,847,026.39 were improperly assessed and collected and should have been returned to the Liquidation Trust following the *Siegel v. Fitzgerald* decision;

16

B.      Enter a judgment against Defendants and require Defendants to direct the

Fund to cause to be paid immediately to the Liquidation Trust the amount of $1,847,026.39;

C.      Award Plaintiff costs and expenses incurred in connection with this

adversary proceeding; and

D.      Grant such other and further relief as the Court may deem just and proper.

17

Dated:  December 29, 2022              _/s/ Colin R. Robinson_

Bradford J. Sandler (DE Bar No. 4142)
Jason S. Pomerantz (CA Bar No. 157216)
Colin R. Robinson (DE Bar No. 5524)
PACHULSKI STANG ZIEHL & JONES LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email:  bsandler@pszjlaw.com
        jpomerantz@pszjlaw.com
        crobinson@pszjlaw.com

-and-

KTBS Law LLP
Michael L. Tuchin (admitted *pro hac vice*)
David A. Fidler (admitted *pro hac vice*)
Robert J. Pfister (admitted *pro hac vice*)
Ariella T. Simonds (*pro hac vice* pending)
Sasha M. Gurvitz (admitted *pro hac vice*)
1801 Century Park East, 26th Floor
Los Angeles, CA 90067
Telephone: (310) 407-4000
Facsimile: (310) 407-9090
Email:  mtuchin@ktbslaw.com
        dfidler@ktbslaw.com
        rpfister@ktbslaw.com
        asimonds@ktbslaw.com
        sgurvitz@ktbslaw.com

*Counsel to Plaintiff Michael Goldberg, in his capacity as Liquidating Trustee of the Woodbridge Liquidation Trust*

DOCS_DE:241844.1